CHRISTINA S. COLL (CA Bar #250712)
christina.coll@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
1700 G Street NW
Washington, DC 20552
Telephone: (202) 309-9704
Facsimile: (415) 844-9788

Attorney for Plaintiff
Consumer Financial Protection Bureau

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, <br><br>Plaintiff, <br><br>v. <br><br>SETTLEIT, INC., <br><br>Defendant. | CASE NO.: <br><br><br>COMPLAINT |

## INTRODUCTION

1.  SettleIt, Inc. is a California-based debt-settlement business that harms consumers in a number of ways, including by (1) failing to disclose its relationship to certain creditors and then regularly prioritizing those creditors in settlements of consumers' debts; (2) claiming that its programs could be completed without consumers having to borrow more money but then steering consumers into high-cost loans to pay off third-party creditors; (3) failing to clearly and conspicuously disclose the costs of its

services; and (4) requiring consumers to pre-authorize settlements so that SettleIt could resolve consumers' debts without their express consent.

2. The Consumer Financial Protection Bureau brings this action under §§ 1031, 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564, 5565, and under the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310, to stop SettleIt's unlawful conduct, obtain relief for harmed consumers, and impose a civil money penalty on SettleIt for its unlawful actions.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

4. Venue is proper here because Defendant SettleIt, Inc. is located, resides, or does business in this district. 12 U.S.C. § 5564(f).

## PARTIES

5. The Bureau is an independent agency charged with enforcing violations of "Federal consumer financial laws." 12 U.S.C. § 5491(a). The Bureau has independent litigating authority, 12 U.S.C. § 5564(a)-(b), including the authority to enforce the CFPA's prohibitions on unfair, deceptive, and abusive acts or practices, 12 U.S.C. §§ 1031, 1036, and the TSR as it applies to persons subject to the CFPA, 15 U.S.C. §§6102(c), 6105(d).

6. SettleIt is a privately held debt-settlement company. At all times relevant to this Complaint, SettleIt has done business in this district. SettleIt offers a debt-settlement program, primarily through telemarketing and online sales, throughout the country; it sold its services to 17,500 customers between December 2016 and April 2019. SettleIt offers debt-management or debt-settlement services and is therefore a "covered person"

2

COMPLAINT

under the CFPA, 12 U.S.C. § 5481(15)(A)(viii), and a "telemarketer" and "seller" under the TSR, 16 C.F.R. §§ 310.3, 310.4.

# FACTS

## SettleIt's Program

7. According to its website, SettleIt "negotiate[s] with your creditors to get a reduction of your outstanding, unsecured debt."

8. SettleIt claims that its "skilled negotiators work to get your creditors to agree to discounted lump sum payoff amounts and the creditors forgive the rest of your balance." SettleIt collects its performance fee upon settlement of the first debt.

9. SettleIt's sales scripts state: "We DO NOT begin negotiating your debt immediately after your first payment clears. We send a power of attorney to your creditors to plant the seed for future negotiations. The negotiation process normally starts once you have made three payments into the program. Under certain circumstances, we may begin negotiating immediately but that is an exception to the standard process."

10. Consumers who enroll in SettleIt's program typically sign a series of documents totaling nineteen pages, the first page of which is a Program Overview.

11. The Program Overview states: "Although settlement policies differ from Creditor to Creditor, our general policy is to begin the negotiation process once you have saved twenty percent (20.00%) of the debt not including any fees that would be owed to SettleIt."

12. The Program Overview includes the program start date, the monthly draft amount, the program length, the enrolled debt amount, and the estimated settlement amount.

13. The Program Overview juxtaposes the total enrolled debt and estimated settlement amount next to each other, but it does not include SettleIt's fee, which is 25% of the enrolled debt.

14. SettleIt discloses its fee five pages after the Program Overview, in the middle of a section titled Compensation: "We do not collect any compensation until one of your Debts is settled. When we reach a settlement of a Debt and you make a payment to the Creditor to satisfy the terms of that settlement we charge and collect 25% of the enrollment amount of that Debt as listed in Exhibit A."

15. SettleIt's sales associates, during their sales pitches, deemphasize the cost to consumers of SettleIt's services.

16. SettleIt instructs sales associates to be vague about the fee by saying that the program's cost and consumers' savings would be determined when its negotiations with creditors were finished.

17. In fact, SettleIt's performance fee is based on the amount of consumers' total enrolled debt, so it is determined at the time consumers enroll in the program and could easily have been disclosed to them.

18. SettleIt also discloses its fee in the middle of a long, recorded disclosure at the conclusion of each sales call.

19. SettleIt's enrollment paperwork states: "You must approve all settlement offers prior to our acceptance of any form of compensation from your Reserve Account and reserve the sole discretion to accept or reject a settlement offer, unless you have executed the attached Pre-authorization form."

20. SettleIt's Pre-Authorization Form includes the following or substantially similar statement for consumer signature:

> [I/we] authorize SettleIt, Inc. to settle any accounts with an offer less than or equal to sixty five (65.00%) percent of the enrolled balance without separate written approval and/or recorded settlement authorization. In the event such a settlement is reached, this authorization also directs DPG to forward payment for such settlement from my/our trust account to my/our creditor without

4

COMPLAINT

separate written approval and/or recorded settlement authorization.

Any settlement offers made above sixty five (65.00%) percent must receive my/our written and/or recorded authorization.

21. This preauthorization form is a standard part of the SettleIt paperwork that consumers signed.

22. SettleIt relied on consumers' pre-authorization form to settle debts without obtaining specific agreements between consumers and their creditors to settle the debt.

### SettleIt's Relationship with CashCall and LoanMe

23. Though it presents itself as an independent debt-settlement company, SettleIt is affiliated with certain creditors, including CashCall and LoanMe, with which it purports to negotiate.

24. SettleIt, CashCall, and LoanMe, as well as LoanMe's subsidiary, Redo Lending, all do business from the same building in Orange, California.

25. The same individual, J. Paul Reddam, owns and controls both SettleIt and CashCall.

26. Reddam also has a relationship with LoanMe: Reddam indirectly has loaned money to the company and previously owned an option to purchase the company, but sold most of it, retaining an option to purchase a 9.9% stake.

27. LoanMe is wholly owned by Bliksum, LLC, of which Jonathan Williams—formerly CashCall's treasurer and Reddam's employee—is the sole owner.

28. CashCall's website provides a link to SettleIt's website.

29. CashCall and LoanMe employees transfer consumers as debt-settlement leads directly to SettleIt's sales associates.

30. SettleIt trains its sales associates to treat consumers who have debts to CashCall and LoanMe differently than other consumers.

COMPLAINT

31. SettleIt's program-enrollment guidelines require a minimum enrolled debt of $7,500, with just one exception: "Less than $7,500 OK if LoanMe/CashCall account is being enrolled and at least two total accounts are enrolled."

32. SettleIt enrolled in its program some consumers with significant debts to CashCall and little other debt.

33. CashCall and LoanMe also gave SettleIt contact information for consumers who were behind on their payments, in some cases by directly transferring those consumers' phone calls to SettleIt.

34. SettleIt favors repayment of debts owed to CashCall and LoanMe over debts owed to other lenders who are not associated with SettleIt.

35. About 12% of SettleIt's consumers have debts to CashCall or LoanMe.

36. Only 1.2% of all consumer debt enrolled with SettleIt is owed to CashCall, but 2.8% of consumers' payments went to CashCall.

37. Only 2.4% of all consumer debt enrolled with SettleIt is owed to LoanMe, but 4.5% of consumers' payments went to LoanMe.

38. SettleIt's sales associates told consumers that SettleIt would be their advocate to creditors.

39. The SettleIt sales script includes in its introduction, in a section specific to consumers with debts to CashCall or LoanMe: "Please be advised we are not owned or operated by any of your creditors."

40. The SettleIt sales script also states that it is acceptable to describe SettleIt's relationship with CashCall and LoanMe as "strategic partner" or "does business with."

### SettleIt's Marketing of New Loans from CashCall and LoanMe

41. SettleIt's website advertised: "DON'T Borrow More Money."

42. But SettleIt did, in fact, market new loans—including from CashCall and LoanMe—to consumers who completed a certain portion of their debt-payment programs.

43. These new loans—called "Fresh Start" loans—are a key part of SettleIt's business.

44. The term of the Fresh Start loan is typically between 36 and 84 months, depending on the size of the loan.

45. The Fresh Start loans offered by CashCall and LoanMe through the SettleIt program have a 24% APR.

46. SettleIt advised consumers regarding the potential benefits of the loans:
- "Zero out balances of previous debt and establish a positive trade line with new loan."
- "Leverage to negotiate debts in a lump sum typically reduces the cost of getting out of debt."
- "Accounts are settled now versus over time."

47. If consumers ask how much money they would need to borrow with the Fresh Start loan, SettleIt's sales associates are instructed to answer: "Typically, we are able to resolve your debts for 75% of your enrolled debt balance, including our fee…."

48. Consumers do not always understand that the Fresh Start loan would be used to pay SettleIt's fees in addition to the consumers' debts, so consumers ultimately paid interest on a Fresh Start loan to pay SettleIt fees.

49. SettleIt's failure to make clear that the Fresh Start loan proceeds would pay SettleIt's fee meant that consumers did not know how little it would actually take to resolve their enrolled debts, and consumers were in no position to then bargain over the fees.

50. For at least some consumers, accepting a Fresh Start loan extended the duration of their payments.

51. For consumers with enrolled debts to CashCall or LoanMe, the Fresh Start loan effectively refinanced their initial debts to CashCall or LoanMe, plus other unsecured debts, with a larger Fresh Start loan from CashCall or LoanMe.

52. SettleIt did not disclose to consumers that it was affiliated with CashCall and LoanMe.

## LEGAL BACKGROUND

### The CFPA

53. Sections 1031 and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1)(B), prohibit "covered person[s]" from engaging in any "abusive act or practice."

54. SettleIt is a "covered person" under the CFPA because it offered or provided consumer-financial products or services, including financial-advisory services, such as assisting consumers with debt-management or debt-settlement and modifying the terms of any extension of credit. 12 U.S.C. § 5481(5), (6), (15)(A)(viii).

### The TSR

55. The TSR defines "debt relief service" as "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector." 16 C.F.R. § 310.2(o).

56. The TSR defines a "seller" as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(dd).

57. The TSR defines "telemarketer" as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer." 16 C.F.R. § 310.2(ff).

58. The TSR defines "telemarketing" in relevant part as "a plan, program, or campaign which is conducted to induce the purchase of goods or services . . . by use of

one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(gg).

59.     SettleIt offers services to renegotiate, settle, or alter the terms of payments of consumers' personal debts.

60.     SettleIt offers and provides these services to consumers nationwide using the telephones and employs more than one interstate telephone call.

61.     SettleIt offers and provides these services to consumers in exchange for payment of performance fees in connection with a telemarketing transaction.

62.     SettleIt is a "telemarketer" or "seller" offering a "debt relief service" under the TSR.

## VIOLATIONS OF LAW

### Count I

### Abusive Acts or Practices Under the CFPA

63.     The allegations in paragraphs 1–62 are incorporated by reference.

64.     Under the CFPA, a practice is abusive if it takes unreasonable advantage of the reasonable reliance by a consumer on the person to protect the consumer's interests in selecting or using a consumer-financial product or service. 12 U.S.C. § 5531(d)(2)(C).

65.     SettleIt told consumers that it would work in their interests only, and consumers reasonably relied on SettleIt to protect their interests in negotiating their debts.

66.     SettleIt had financial connections to CashCall and LoanMe, two companies that were creditors for some consumers' enrolled debt and lenders for some consumers' Fresh Start loans.

67.     Consumers did not know that SettleIt had financial connections to CashCall and LoanMe.

68.     SettleIt did not tell consumers that it had financial connections to CashCall and LoanMe; in fact, SettleIt told consumers that it was *not* owned or operated by any of consumers' creditors.

COMPLAINT

9

69. SettleIt prioritized the settlement of debts owed to CashCall and LoanMe over debts owed to unaffiliated creditors.

70. SettleIt "settled" debts with CashCall and LoanMe ahead of—or instead of—other debts.

71. Settling debts with CashCall and LoanMe allowed SettleIt to collect its "performance" fee for those settlements.

72. SettleIt offered consumers new Fresh Start loans from CashCall and LoanMe.

73. Consumers used the proceeds from the Fresh Start loans to pay SettleIt's fees.

74. SettleIt took unreasonable advantage of consumers' reasonable reliance that SettleIt would protect their interests in negotiating their debts by engaging in a form of self-dealing that benefitted SettleIt, CashCall, and LoanMe at consumers' expense.

75. SettleIt therefore engaged in abusive acts or practices that violated §§ 1031 and 1036 of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## Count II

**Failing to Clearly and Conspicuously Disclose Total Cost Under the TSR**

76. The allegations in paragraphs 1–62 are incorporated by reference.

77. The TSR requires sellers and telemarketers, before a customer consents to pay, "to disclose truthfully, in a clear and conspicuous manner . . . [t]he total costs to purchase, receive, or use . . . any goods or services that are the subject of the sales offer." 16 C.F.R. § 310.3(a)(1)(i).

78. On the first page of the documents consumers sign, SettleIt juxtaposes the amounts of their enrolled debt and estimated settlements, but it does not include its estimated fee, which is 25% of the enrolled debt, in this comparison.

79. SettleIt's performance fee is based on the amount of consumers' total enrolled debt, so it is determined at the time consumers enroll in the program.

COMPLAINT

80. SettleIt's sales associates obscure the cost of SettleIt's program during the sign-up process: SettleIt's sales associates, during their sales pitches, deemphasize the cost to consumers of SettleIt's services; and SettleIt instructs sales associates to be vague about the fee by saying that the program's cost and consumers' savings would be determined when its negotiations with creditors were finished.

81. SettleIt therefore violated the TSR's requirement to truthfully disclose the cost of its program. 16 C.F.R. § 310.3(a)(1)(i).

## Count III

## Misrepresentation of Total Cost Under the TSR

82. The allegations in paragraphs 1–62 are incorporated by reference.

83. The TSR prohibits misrepresenting any material aspect of any debt-relief service, which specifically applies to misrepresentations concerning "the amount of money or the percentage of the debt amount that a consumer may save." 16 C.F.R. § 310.3(a)(2)(x).

84. On the first page of the documents consumers sign, SettleIt juxtaposes the amounts of their enrolled debt and estimated settlements, but it does not include its estimated fee, which is 25% of the enrolled debt, in this comparison.

85. Many consumers would have reasonably relied on the cost comparison provided upfront and understood the difference between the enrolled debt and the estimated settlements to be the amount of money the consumers could save.

86. SettleIt's sales associates obscure the cost of SettleIt's program during the sign-up process: SettleIt's sales associates, during their sales pitches, deemphasize the cost to consumers of SettleIt's services; and SettleIt instructs sales associates to be vague about the fee by saying that the program's cost and consumers' savings would be determined when its negotiations with creditors were finished.

87. The written and oral presentation of SettleIt's cost are likely to mislead consumers about the total cost of its program.

11

COMPLAINT

88. SettleIt therefore violated the TSR's prohibition on misrepresenting any material aspect of any debt-relief service, including the cost of the program. 16 C.F.R. § 310.3(a)(2)(x).

### Count IV

### Failure to Obtain Consent Before Accepting Fees Under the TSR.

89. The allegations in paragraphs 1–62 are incorporated by reference.

90. The TSR prohibits SettleIt from, "[r]equesting or receiving payment of any fee or consideration for any debt relief service *unless*:

(A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to *a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer…*" 16 C.F.R. § 310.4(a)(5)(i)(A) (emphasis added).

91. In the preamble to the debt relief amendments to the TSR, the rulemakers clarified that "[a] contract signed at the outset specifying, for example, that any offer that involves the payment of a certain amount will be deemed acceptable to the consumer is not sufficient to comply with the Rule." 75 Fed. Reg. 48489 (Aug. 10, 2010).

92. Nevertheless, SettleIt had consumers sign pre-authorization forms in their enrollment paperwork.

93. SettleIt relied on these pre-signed forms as authority to settle any accounts with an offer less than or equal to a specific percent of the enrolled balance without separate written approval or a recorded settlement authorization.

94. SettleIt's collection of fees based on consumers' pre-authorizations to accept settlement offers did not comply with the TSR.

95. SettleIt therefore violated 16 C.F.R. § 310.4(a)(5)(i)(A).

COMPLAINT

## Count V

### SettleIt's Violations of the TSR Are Violations of the CFPA

96. The allegations in paragraphs 1–62 are incorporated by reference.

97. Under the CPFA, it is unlawful for covered persons to commit any act or omission in violation of Federal consumer financial laws. 12 U.S.C. § 5536(a)(1)(A).

98. A violation of the TSR is treated as a violation of a rule under § 1031 of the CFPA. 15 U.S.C. § 6102(c)(2).

99. SettleIt violated the TSR when it failed to truthfully disclose in a clear and conspicuous way the total cost of its debt-settlement program.

100. SettleIt violated the TSR when it misrepresented the total cost of its debt-settlement program.

101. SettleIt violated the TSR when it relied on pre-authorization forms to settle consumers' debts.

102. SettleIt's TSR violations are violations of § 1036(a)(1)(A) of the CFPA.

### Demand for Relief

The Bureau requests that the Court:

    a. enjoin SettleIt from committing violations of the CFPA and TSR;

    b. order SettleIt to pay damages, restitution, or other monetary relief to consumers;

    c. order SettleIt to pay disgorgement or compensation for unjust enrichment;

    d. impose a civil money penalty under 12 U.S.C. § 5564(a) of the CFPA;

    e. order SettleIt to pay the costs incurred in connection with prosecuting this action; and

COMPLAINT

    f. award additional relief as the Court may determine to be just and proper.

Respectfully submitted,

Cara M. Petersen
*Acting Enforcement Director*
Jeffrey Paul Ehrlich
*Deputy Enforcement Director*
Owen P. Martikan
*Assistant Litigation Deputy*

<u>/s/ Christina S. Coll</u>
Christina S. Coll (CA Bar #250712)
Telephone: (202) 309-9704
E-mail: christina.coll@cfpb.gov
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Facsimile: (415) 844-9788
*Attorney for Plaintiff Consumer Financial Protection Bureau*